UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| CONNIE BURGESS, | : | Case No. 3:09-cv-461 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of the Social | : | |
| Security Administration, | : | |
| | : | |
| Defendant. | : | |

**DECISION AND ENTRY: (1) THE ALJ'S NON-DISABILITY FINDING IS NOT
SUPPORTED BY SUBSTANTIAL EVIDENCE, AND IT IS REVERSED;
(2) JUDGMENT IS ENTERED IN FAVOR OF PLAINTIFF AWARDING
BENEFITS; AND (3) THIS CASE IS CLOSED**

This is a Social Security disability benefits appeal.  At issue is whether the

administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore

not entitled to a period of disability or disability insurance benefits ("DIB"), supplemental

security income ("SSI"), or disabled widow's benefits ("DWB").  (*See* Administrative

Transcript ("Tr.") (Tr. 20, 488).

**I.**

On March 11, 2006, Plaintiff filed an application for DIB, alleging that she

became disabled on July 31, 2003, due to various back ailments, depression, and anxiety.

(Tr. 202).  Upon denial of her claims on the state agency levels, she requested a hearing

*de novo* before an ALJ.  (Tr. 94, 98, 101).  In the interim, Plaintiff filed separate

applications for DWB and SSI on July 24, 2008.  (Tr. 8, 476).  These claims were

escalated to the hearing level. (*Id*.). A hearing before ALJ Thomas R. McNichols II was held on September 30, 2008, and a supplemental hearing was held on May 13, 2009. (*Id*.). Plaintiff, represented by counsel, Stephanie Dobson, was present and testified at both hearings, and a vocational expert, Vanessa Harris, appeared and testified at the supplemental hearing. (Tr. 752-801).

On June 30, 2009, the ALJ entered two decisions, one concerning Plaintiff's claim for DWB and one regarding Plaintiff's claim for DIB and SSI. Both decisions are substantively identical, with each finding Plaintiff not disabled because Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of light exertional work for which there were a significant number of jobs. (Tr.13).[1]

Plaintiff appealed the ALJ's denial to the Appeals Council. (Tr. 4). On October 5, 2009, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-3). Subsequently, Plaintiff commenced this action in federal court under 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision.

At the alleged onset of Plaintiff's disability, Plaintiff was a 46 year old female with a tenth grade education whose past relevant work experience was as a motor vehicle assembler, hand packager, cashier/checker, janitor, deli-cutter/slicer, and industrial cleaner/sweeper. (Tr. 19, 34-35, 83, 180, 203).

---

[1] Because the decisions are substantively identical, for the sake of economy and clarity, citations to the ALJ's decisions will only be made to the decision denying DWB.

-2-

The ALJ's "Findings of Fact and Conclusions of Law," which represent the

rationale of his decision, were as follows:

1.      It was previously found that the claimant is the unmarried widow of the deceased insured worker. She "attained" age 50 on December 15, 2006. The claimant met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act.

2.      The prescribed period ended on December 31, 2005.

3.      The claimant has not engaged in substantial gainful activity since July 31, 2003, the alleged disability onset date (20 CFR 404.1571 *et seq*.).

4.      The claimant has the following severe impairments: lumbar spine disorder; depression; and anxiety disorder (20 CFR 404.1520(c)).

5.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

6.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to: lift up to 10 pounds; standing and walking are limited to a combined total four hours in an eight-hour workday; she is limited to jobs that permit the use of a cane or walker to ambulate; she must avoid climbing ropes, ladders, or scaffolds, balancing, squatting, stooping, kneeling, crouching, crawling and repetitive bending and repetitive twisting at the waist, exposure to vibrations or hazards, more than occasional exposure to extreme cold, work on uneven surface, more than occasional use of foot controls, dealing with the general public or any requirement to maintain concentration on a single task longer than 15 minutes at a time. Therefore, she is limited to a reduced range of light work.

7.      The claimant is unable to perform any past relevant work (20 CFR 404.1565).

8.      The claimant was born on December 16, 1956. She was 46 years old and a "younger individual" at the alleged onset date. She is now 52 and "closely approaching advanced age" (20 CFR 404.1563).

9.    The claimant has a "limited" education and is able to communicate in English (20 CFR 404.1564).

10.   The claimant does not have transferable skills.  This finding is based on Vocational Expert testimony (20 CFR 404.1568).

11.   Considering her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

12.   The claimant has not been under a "disability," as defined in the Social Security Act, from July 31, 2003, the alleged disability onset date, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 8-21).

On appeal, Plaintiff argues: (1) the ALJ erred in his evaluation of Plaintiff's physical limitations; and (2) the ALJ erred in his evaluation of Plaintiff's mental limitations.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971).  In performing this review, the Court considers the record as a whole.  *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

-4-

> The Commissioner's findings are not subject to reversal
> merely because substantial evidence exists in the record to
> support a different conclusion. The substantial evidence
> standard presupposes that there is a "zone of choice" within
> which the Commissioner may proceed without interference
> from the courts. If the Commissioner's decision is supported
> by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that she is

entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, she must present

sufficient evidence to show that, during the relevant time period, she suffered an

impairment, or combination of impairments, expected to last at least twelve months, that

left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### A.

In her first assignment of error, Plaintiff asserts that the ALJ erred in his evaluation

of Plaintiff's physical limitations. Specifically, Plaintiff argues that the ALJ, without

explanation, ignored the most limiting aspect of the state agency examining physician's

opinion – Plaintiff's inability to lift or carry any amount of weight frequently – which

would have decisively altered Plaintiff's RFC. The Court agrees.

On or about November 3, 2008, Plaintiff, at the ALJ's behest, underwent an

examination by Dr. Vitols, D.O., an orthopedic surgeon. In addition to the physical

examination of Plaintiff, Dr. Vitols also reviewed several medical imaging tests of

Plaintiff's back. (Tr. 437). The first was a June 14, 2004 MRI of Plaintiff's lumbar

-5-

spine, which revealed facet arthropathy, disc profusion at L4-L5 with some slight anterolisthesis of L4 on L5, producing a spinal canal impingement. The second was a June 8, 2005 MRI of Plaintiff's lumbar spine showing "severe degenerative changes of the L5-S1 disc space with facet joint arthropathy and lateral recess stenosis." March 20, 2006 x-rays of Plaintiff's cervical spine showed disc space narrowing and degenerative disc changes at C6-C7. Finally, an April 10, 2007 MRI of Plaintiff's lumbar spine showed lateral recess stenosis at L5-S1, greater on the left, with facet joint hypertrophy. (*Id.*).

Dr. Vitols' impression following the examination was: cervical degenerative disc disease at C6-C7; "[l]umbar spine facet arthropathy with degenerative disc disease and lateral recess stenosis at L5-S1;" depression; exogenous obesity; and possible uncontrolled hypertension. (Tr. 440). His ultimate assessment was that Plaintiff "does not have the residual capacity to stand, walk, bend or twist at her waist on a regular basis. For the most part, she requires a walker for assisted ambulation and reports she can only walk but a few feet at a time without the walker." (*Id.*). Dr. Vitols based his findings "on subjective complaints, history by the claimant and clinical objective findings of this examination and review of available medical records." (*Id.*).

Dr. Vitols also completed a form, again dated November 3, 2008, from the Social Security Administration's Office of Disability Adjudication and Review entitled, "Medical Source Statement of Ability to Do Work-Related Activities (Physical)." He

based his findings on the previously discussed examination and report. Dr. Vitols marked that Plaintiff could: occasionally lift up to 20 lbs. and could occasionally carry up to 10 lbs.; sit, stand, and walk for 1 hour each without interruption; and sit for 4 hours, stand for 2 hours, and walk for 2 hours total out of an 8 hour work day. (Tr. 446-7). He noted that Plaintiff's use of a walker is medically necessary and that she can only walk a "few feet" without it. (Tr. 447). He marked that Plaintiff should never balance, stoop, kneel, crouch, or crawl, or climb stairs, ramps, ladders or scaffolds. (Tr. 449). Dr. Vitols checkmarked that Plaintiff should never be exposed to unprotected heights, moving mechanical parts, or vibrations, and should never operate a motor vehicle. (Tr. 450). He also noted that Plaintiff would have these limitations for 12 consecutive months. (Tr. 451).

In his decision, the ALJ called Dr. Vitols' opinion "the general basis for the physical restrictions in the residual functional capacity . . ." (Tr. 14). Nonetheless, as Plaintiff points out, the RFC delineated by the ALJ contained a significant deviation from Dr. Vitols' assessment: Dr. Vitols marked that Plaintiff could occasionally lift up to 20 lbs., yet did not mark that she was able to do any frequent lifting. (Tr. 446). However, the ALJ noted that Plaintiff could simply "lift up to 10 pounds," without a limitation as to frequency. (Tr. 13).

This seemingly minor difference is of crucial importance. At Plaintiff's supplemental hearing before the ALJ, the vocational expert testified that, under the RFC

-7-

determined by the ALJ, Plaintiff could perform some 4,500 light level jobs and 3,500 sedentary jobs. (Tr. 84-6). However, when asked by Plaintiff's attorney whether his assessment would change if the RFC were further limited to lifting up to 20 lbs. occasionally, no frequent lifting, and carrying up to 10 lbs. occasionally, the vocational expert stated, "These jobs would not be available . . ." (Tr. 87).

It is unclear why the physical component of the ALJ's RFC mirrors Dr. Vitols' assessment in essentially every respect but this critical one. Dr. Vitols based his opinion not only on his personal examination of Plaintiff, but also on his review of some four medical imaging scans of her lumbar spine and Plaintiff's medical history. (Tr. 440). It was the ALJ, in fact, who ordered Dr. Vitols' examination, and the ALJ explicitly granted his opinion more weight than that of another state agency physician because of Dr. Vitols' orthopedic specialty. (Tr. 14). The ALJ must articulate sufficient reasons for rejecting only a single aspect of Dr. Vitols' opinion while accepting virtually everything else.

The only bit of rationale the ALJ provided for his decision regarding Plaintiff's lifting capacity is puzzling. He wrote, "Dr. Vitols's assessment is the general basis for the physical restrictions in the residual functional capacity, though restriction to lifting 10 pounds was added based on [Plaintiff's] use of an ambulatory aid, though the need is not well-supported by the objective evidence." (Tr. 14). It is unclear what to make of this statement. If Plaintiff's use of a walker was not supported by the medical evidence, the ALJ should not have included it in Plaintiff's RFC. Yet, he did include it, and even based

-8-

his decision as to Plaintiff's lifting capability on it. However, in doing so, he deviated from Dr. Vitols's opinion in a key fashion. In all, the ALJ's statement is confusing and does not illuminate his rationale for devising a different lifting restriction than that called for by Dr. Vitols.

Defendant makes several arguments defending the ALJ's RFC formulation generally and his decision regarding Plaintiff's lifting capacity specifically.

First, Defendant maintains that if the ALJ intended the RFC to denote that Plaintiff could lift up to 10 lbs. frequently, it is supported by the medical record, while Dr. Vitols' more limited restriction is not. Defendant notes Dr. Vitols found Plaintiff's arms and upper extremities to be normal, that she could use her hands continually, that she could sort, handle, and use paper and files, and that she was able to prepare meals, feed herself, and care for her personal hygiene. Defendant also observed that Plaintiff never complained to any doctor about problems lifting. (Defendant's *Memorandum in Opposition* at 10). But this ignores entirely Dr. Vitols' significant findings regarding Plaintiff's back problems, which undoubtedly affect Plaintiff's lifting ability. Dr. Vitols' diagnoses of cervical degenerative disc disease, lumbar spine facet arthropathy with degenerative disc disease, and lateral recess stenosis adequately support his lifting restriction. (Tr. 437).

Next, Defendant argues that Plaintiff simply misinterprets both Dr. Vitols' opinion and the ALJ's decision. Defendant notes that the form Dr. Vitols completed only asked whether Plaintiff could lift up to 10 lbs. frequently, not whether she could lift *any* weight

frequently. (Tr. 446). Therefore, contrary to Plaintiff's understanding, Defendant asserts

that Dr. Vitols never opined that Plaintiff could not lift any weight frequently, only that

she could not lift up to 10 lbs. frequently. Defendant reiterates that Plaintiff's supposed

lifting-related abilities confirms the ALJ's lifting restriction, while the record does not

support Plaintiff's interpretation of Dr. Vitols' opinion. Therefore, Defendant concludes,

the ALJ correctly discerned Plaintiff's RFC according to both Dr. Vitols' opinion and the

rest of the medical record. (Defendant's *Memorandum in Opposition* at 10).

Defendant is correct that the form Dr. Vitols completed is somewhat limited and

unclear. Yet, within the form there is some guidance. Dr. Vitols did annotate the form

several times, including once clarifying his checkmark when the form's binary answers

did not adequately account for his opinion of Plaintiff's abilities,[2] as Defendant speculates

happened here. It seems, then, if Dr. Vitols wanted to note that Plaintiff could lift some

weight less than 10 lbs. frequently, he knew how to do so. The fact that he did not do so

tends to show that Dr. Vitols did believe Plaintiff was restricted from lifting any weight

frequently, leaving the ALJ to explain this lone deviation from Dr. Vitols' opinion. He

has not done so. Furthermore, as explained *supra*, the blanket frequent lifting restriction

is supported by Dr. Vitols' assessment of Plaintiff's serious lumbar spine problems.

Finally, Defendant argues that, rather than being pivotal, it is inconsequential

whether or not Plaintiff is restricted from any frequent lifting. Defendant's syllogism is

---

[2] The form asks, "Can the individual perform activities like shopping?" and provides only spaces to check "Yes," or "No." Dr. Vitols checked, "Yes," but next to the box wrote, "Limited." (Tr. 451).

such: the vocational expert identified some 3,500 sedentary jobs Plaintiff was capable of doing; and sedentary jobs, by definition, do not require any frequent lifting; consequently, even with a total frequent lifting limitation, there would still be a significant number of jobs Plaintiff is capable of performing; therefore, Plaintiff is not disabled. (Defendant's *Memorandum in Opposition* at 11).

Yet, as Plaintiff points out, Defendant's argument does not take into account Plaintiff's many other limitations that affect her ability to perform a full range of sedentary work. More importantly, Defendant also completely disregards the independent vocational expert's testimony, wherein she straightforwardly acknowledged that if Plaintiff's RFC included a blanket restriction on frequent lifting, "[t]hese jobs would not be available . . ." (Tr. 87).

In conclusion, the ALJ's decision regarding Plaintiff's RFC is flawed to the extent that it permits Plaintiff to lift up to 10 lbs. frequently. The ALJ did not explain why he deviated from solely this aspect of Dr. Vitols' opinion, which he otherwise accepted *in toto*. Dr. Vitols' assessment that Plaintiff could lift up to 20 lbs. occasionally but no weight frequently is supported by objective medical testing and the rest of the record. According to the vocational expert, whose testimony the ALJ heavily relied upon, Plaintiff would be incapable of performing any of the some 8,000 light and sedentary jobs the vocational expert identified. Therefore, the ALJ's decision that Plaintiff is not disabled is not supported by substantial evidence and it is reversed.

## III.

When, as here, the nondisability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted.

The Court has authority to affirm, modify or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Heath & Human Servs.*, 17 F.3d 171, 176 (6th Cir 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 782 (6th Cir. 1987).

The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 772 F.2d 966, 973 (6th Cir. 1985). Such is the case here.

As recounted herein, proof of disability is great and remand will serve no purpose other than delay. All substantial factual issues have been resolved and the record reflects that Plaintiff is disabled. In light of the medical evidence, proffered chiefly by the Commissioner's own medical expert, and the testimony of the independent vocational expert, proof of disability is overwhelming.

-12-

## IV.

For the foregoing reasons, Plaintiff's assignments of error are well taken. The ALJ's decision is not supported by substantial evidence, and it is reversed. This case is remanded for an immediate award of benefits as the record overwhelmingly establishes Plaintiff's entitlement to a period of disability, disability insurance benefits, disabled widows benefits, and supplemental security income as of July 31, 2003.

**IT IS SO ORDERED.**

Date: 3|1|11

Timothy S. Black
United States District Judge

-13-